KAREN P. HEWITT
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
California State Bar No. 223317
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7736
Facsimile: (619) 235-2757
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 08CR0877-JM |
| Plaintiff, | ) | Date: April 25, 2008<br>Time: 11:00 a.m. |
| v. | ) | The Honorable Jeffrey T. Miller |
| JAMES CRYSTAL GARCIA, | ) | **UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO** |
| Defendant. | ) | **1) COMPEL DISCOVERY;**<br>**2) PRESERVE EVIDENCE; AND**<br>**2) GRANT LEAVE TO FILE FURTHER MOTIONS** |
| | ) | **TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Joseph J.M. Orabona, Assistant United States Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions. This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

## I

## STATEMENT OF THE CASE

On March 25, 2008, a federal grand jury in the Southern District of California returned a two-count indictment against Defendant JAMES CRYSTAL GARCIA ("Defendant"). The Indictment charges Defendant with one count of importing approximately 60.94 kilograms (134.07 pounds) of marijuana into the United States, in violation of 21 U.S.C. §§ 952 & 960, and one count of possessing approximately 60.94 kilograms (134.07 pounds) of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). On March 25, 2008, Defendant was arraigned on the Indictment and entered a plea of not guilty. On April 11, 2007, Defendant filed the above captioned motions. The United States files the following response.

## II

## STATEMENT OF FACTS

### A. <u>OFFENSE CONDUCT</u>

#### 1. <u>Events Leading to Seizure of Marijuana</u>

On February 27, 2008, at approximately 6:16 p.m., Defendant drove a white, 2000 Daewoo Leganza not bearing license plates into the vehicle primary lanes at the Calexico, California, West Port of Entry. Defendant was accompanied by a seventeen year old minor. The United States Customs and Border Protection Officer Gonzales was working the primary inspection lane when Defendant approached in the vehicle. Officer Gonzales received a negative customs declaration from both occupants of the vehicle. Officer Gonzales notices that Defendant was nervous, avoided eye contact, and allowed the minor to answer most of the questions during the primary inspection. As such, Officer Gonzales referred Defendant and his vehicle to the secondary inspection area.

In the secondary inspection area, Officer Randolph screened the car with his narcotics detector dog and the dog alerted to the floor area inside the vehicle. Officer Aguilar conducted a more thorough examination of the car and discovered several packages wrapped in duct tape concealed in a non-factory compartment in the floor of the car and in the rear seat. Officer Aguilar performed a field test on one of the packages and it tested positive for marijuana. A total of twenty-six packages were removed from the car with a total weight of 60.94 kilograms (134.07 pounds). Defendant was arrested.

**2. Post-Miranda Statements**

At approximately 12:25 a.m., on February 28, 2008, United States Immigration and Customs Enforcement (ICE) agents advised Defendant was of his Miranda rights. Defendant acknowledged that he understood his Miranda rights, and he agreed to waive those rights and speak with the ICE agents without the presence of counsel.

Defendant admitted he knew he was smuggling drugs into the United States. Defendant stated that the minor, who was the passenger in the car, recruited him to be involved in the offense. The minor knew the registered owner of the car and setup the smuggling deal with "Ramon." Defendant stated that the minor was to be paid for smuggling the drugs into the United States and the minor would then pay Defendant whatever she wanted to give him. Defendant was told that the car contained drugs; however, he was not told the type of drugs nor the location of where the drugs were concealed in the car.

The minor is being prosecuted in State Juvenile Court.

**III**

**THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH MEMORANDUM OF POINTS AND AUTHORITIES**

**A. MOTIONS TO COMPEL DISCOVERY AND PRESERVE EVIDENCE**

As of the date of this Motion, the United States has produced 130 pages of discovery (including reports of the arresting officers and agents, a criminal history report, photographs of the car and marijuana seized) and 1 DVD-ROM containing Defendant's videotaped, post-arrest. The United States will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. §3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received **no** reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States respectfully requests the Court issue no orders compelling specific discovery by the United States at this time.

**1, 2. Defendant's Statements And Arrest Reports**

The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United

States will supplement its discovery. The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

The United States also objects to Defendant's request for an order for production of any rough notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See discussion infra Part III.A.12.; see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom." United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981). In addition, the United States considers the rough notes of its agents to be United States' work product, which Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

**3. *Brady* Material And Information That May Result In A Lower Sentence**

The United States has complied and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision." United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980). The standard for disclosure is materiality. Id. "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense." United States v.

Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

The United States will also comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963). Furthermore, impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence." United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted). However, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

Defendant also claims that the United States must disclose information affecting Defendant's sentencing guidelines because such information is discoverable under Brady v. Maryland, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under Brady.

The United States is not obligated under Brady to furnish a defendant with information which he already knows. See United States v. Taylor, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). Brady is a rule of disclosure, and therefore, there can be no violation of Brady if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. See United States v. Gaggi, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. See United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is unwarranted.

**4. Defendant's Prior Record**

The United States has already provided Defendant with a copy of his criminal record and related court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D). As stated above, any additional court documents will be provided to Defendant within a reasonable time after receipt from the respective state court.

/ /

/ /

**5. <u>Any Proposed 404(b) or 609 Evidence</u>**

The United States has complied and will continue to comply with its obligations under Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid."). The United States has already provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16(a)(1)(D).

Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. <u>See</u> FED. R. EVID. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

Should the United States seek to introduce any similar act evidence, pursuant to Federal Rules of Evidence 404(b) and 609, it will provide Defendant with notice of its proposed use of such evidence and information about such bad acts at the time the United States files its Trial Memorandum. The United States objects to Defendant's request to provide such notice three weeks before trial.

**6, 8. <u>Evidence Seized and Tangible Objects</u>**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were obtained from or belongs to Defendant.

The United States need not, however, produce rebuttal evidence in advance of trial. <u>See</u> <u>United States v. Givens</u>, 767 F.2d 574, 584 (9th Cir. 1984).

**7. <u>Request for Preservation of Evidence</u>**

The United States will preserve all evidence pursuant to an order issued by this Court. The United States objects to a vague and overbroad request to preserve all physical evidence. Furthermore, the United States objects to Defendant's request that the "prosecutor be ordered to <u>question</u> all agencies and individuals involved in the prosecution and investigation of this case" as being vague, overbroad, and not required by any rule of law. Defendant fails to cite any legal authority to support this request.

**9. TECS Reports**

The United States objects to providing Defendant with complete vehicle and pedestrian crossing reports from the Treasury Enforcement Communications System ("TECS"). TECS reports are not subject to Fed. R. Crim. P. 16(c) because the reports are neither material to the preparation of the defense, nor intended for use by the United States as evidence during its case-in-chief. The TECS reports are not Brady material because the TECS reports do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. If the United States intends to introduce TECS information at trial, discovery of the relevant TECS reports will be made at least by the time of the filing of its trial memorandum.

**10. Opportunity to Weigh, View, and Photograph Contraband**

As stated previously, the United States has, and will continue to comply with Fed. R. Crim. P. 16(a)(1)(C) in allowing Defendant an opportunity, upon reasonable notice, to examine, copy and inspect physical evidence which is within the possession, custody or control of the United States, and which is material to the preparation of Defendant's defense or is intended for use by the United States as evidence in chief at trial, or were obtained from or belong to Defendant.

**11. DEA-7 Form**

The United States will provide Defendant with the results of the Drug Enforcement Administration laboratory tests on the marijuana seized in this case pursuant to Fed. R. Crim. P. 16(F).

**12. Narcotics Detector Dog Information**

The United States strongly objects to providing Defendant with Narcotic Detector Dog information. Defendant cites no legal ground for this request. The interior and exterior of Defendant's vehicle was sniffed in the secondary inspection area at the border, where no probable cause or even a reasonable articulable suspicion is needed to conduct a routine search. United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985); United States v. Vargas-Castillo, 329 F3d 715, 722 (9th Cir. 2003). Thus, none of the information Defendant requests is relevant or discoverable.

**13. Expert Witnesses**

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States

intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705. The United States objects to Defendant's request to provide such notice three weeks before trial as it is not required by any rule of law.

**14. Scientific and Other Information**

The United States will provide Defendant with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

**15. *Henthorn* Materials**

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

Defendant's request that the specific prosecutor in this case review the personnel files is unwarranted and unnecessary. Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30- 31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor personally review the personnel files.

**16, 17, 19, 23. Evidence of Bias or Motive to Lie / Impeachment Evidence/ Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling / *Giglio* Material**

The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972). Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959). The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her testimony. The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

**18. Evidence of Criminal Investigation of Any United States' Witness**

The United States objects to Defendant's overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment information. The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

/ /

/ /

/ /

**20, 21. Witness Addresses and Names of Witnesses Favorable to the Defendant**

The United States objects to Defendant's request for witness addresses. None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call. Therefore, the United States will not comply with this request.

The United States will produce the names of witnesses it intends to call at trial. Defendant has already received access to the names of potential witnesses through the discovery sent to his counsel. The United States is not aware of any individuals who were witnesses to Defendant's offense except the law enforcement agentes who apprehended him. The names of these individuals have already been provided to Defendant.

**22. Statements Relevant to the Defense**

The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent. In making this request, Defendant relies on United States v. Bailleaux, 685 F.2d 1105 (9th Cir. 1982), overruled on other grounds by Huddleston v. United States, 485 U.S. 681, 108 S.Ct. 1496, 1499 (1988). Defendant asserts that Bailleauz interprets Fed. R. Crim. P. 16 as requiring the United States to disclose "any statement relevant to any possible defense or contention" that Defendant might assert. [Def Motion at 6 (internal quotation marks omitted).] However, the Ninth Circuit holding was not so broad. In fact, the Ninth Circuit, interpreting Fed. R. Crim. P. 16, held: "We believe the Government should disclose any statement made by the defendant that may be relevant to any possible defense or contention that the defendant might assert." See Bailleaux, 685 F.2d at 1114 (emphasis added). Therefore, the United States will only disclose relevant statements made by Defendant pursuant to this request.

**23, 24. Agreements/Informants and Cooperating Witnesses**

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

That said, the United States is unaware of the existence of an informant or any cooperating witnesses in this case. The United States is also unaware of any agreements between the United States and potential witnesses. However, as previously stated, the United States will provide Defendant with a list of all witnesses which it intends to call in its case-in-chief at the time the Government's trial memorandum is filed, although delivery of such a list is not required. See United States v. Dischner, 960 F.2d 870 (9th Cir. 1992); United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987); United States v. Culter, 806 F.2d 933, 936 (9th Cir. 1986).

**25. Bias by Informants or Cooperating Witnesses**

As noted above, the United States recognizes its obligation under Brady and Giglio to provide material evidence that could be used to impeach Government witnesses including material information related to bias or motive to lie.

**26. Jencks Act Material**

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994).

Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks Act statements. See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

**27. Residual Request**

As already indicated, the United States will comply with its discovery obligations in a timely manner.

**B. LEAVE TO FILE FURTHER MOTIONS**

The United States does not oppose Defendant's request to file further motions if they are based on new discovery or other information not available to Defendant at the time of this motion hearing.

**IV**

**CONCLUSION**

For the foregoing reasons, the United States requests the Court deny Defendant's Motions to Compel Discovery, Preserve Evidence and Leave to File Further Motions, unless unopposed.

DATED: April 18, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney